IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| FNU KAUSHIK SAURABH, et al.,<br>Plaintiffs,<br>v.<br>EB5 AFFILIATE NETWORK, LLC,<br>Defendant. | CIVIL NO. 26-1228 (CVR) |

**OPINION AND ORDER**

The present case was filed by Plaintiffs Fnu Kaushik Saurabh, Carolina Franco de Poppe, Sasikiran Dadi, and Sri Krishna Chaitanya Anne (collectively, "Plaintiffs"), individually and on behalf of others similarly situated, against Defendant EB5 Affiliate Network, LLC ("EB5", or "Defendant"). Plaintiffs allege Defendant incurred in securities fraud, breach of fiduciary duty, breach of contract and unlawful broker-dealer activities. Plaintiffs aver that, together with other investors, they relied on Defendant's written representations and business plans to invest in Higher Ground Education's ("HGE") Montessori school funds (the "HGE Funds"). This investment, in turn, would allow them to apply for permanent residence in the United States thorough the EB-5 Immigrant Investor Program (the "EB-5 Program") run by the federal government. HGE and its affiliates ultimately filed for Chapter 11 bankruptcy in 2025 and Plaintiffs lost both their investment and the immigration benefits EB5 had promised. (Docket No. 1).

Before the Court is "Defendant's Motion to Transfer Venue Pursuant To 28 U.S.C. § 1404(a) and Supporting Memorandum of Law" (Docket No. 14) as well as its accompanying Affidavit and exhibits in support thereof (Docket No. 15); Plaintiffs'

Opposition thereto (Docket No. 17); and Defendant's Reply to Plaintiffs' Opposition. (Docket No. 20).

Defendant seeks to transfer this case to Delaware, arguing several agreements signed by Plaintiffs in conjunction with their investment and which govern their own actions contain specific and exclusive choice of law, forum selection and venue clauses (collectively, the "Forum Selection Clauses") which obligated Plaintiffs to file this suit in Delaware.

In turn, Plaintiffs' Opposition proffers that venue is proper in Puerto Rico, insofar as the actions giving rise to their claims occurred here because EB5 allegedly operated out of an office here. They additionally argue that, because the Forum Selection Clauses are invalid, the traditional 28 U.S.C. §1404(a) balancing elements favor Puerto Rico.

After careful review of the parties' filings, Defendant's "Defendant's Motion to Transfer Venue Pursuant To 28 U.S.C. § 1404(a) and Supporting Memorandum of Law" (Docket No. 14) is GRANTED and this case is transferred to Delaware.

**BACKGROUND**

Congress created the EB-5 Program in 1990 to stimulate the U.S. economy through job creation and capital investment by foreign investors.[1] In 1992, Congress created the Immigrant Investor Program, also known as the Regional Center Program, which sets aside EB-5 visas for participants who invest in commercial enterprises associated with regional centers approved by the United States Citizenship and Immigration Service

[1] https://www.uscis.gov/working-in-the-united-states/permanent-workers/eb-5-immigrant-investor-program.

("USCIS") based on proposals for promoting economic growth. Id. USCIS administrates the EB-5 Program. Id. Investors (and their spouses and unmarried children under 21) are eligible to apply for lawful permanent residence (i.e. become a green card holder) if they make the necessary investment in a commercial enterprise in the United States and plan to create or preserve ten permanent full-time jobs for qualified U.S. workers. Id. Plaintiffs are foreign-national EB-5 investors who each invested $500,000.00 in one of four different HGE Funds.

Defendant EB5 is a Florida limited liability company that, according to the Complaint, marketed, processed, and administered the HGE Fund offerings to investors from and through a Puerto Rico address. EB5 used its Puerto Rico address to offer and market the HGE Funds, control investor intake, manage reservations and admissions into the HGE Funds, process subscription agreements, direct investor wires to escrow accounts as well as provide support to investors for the relevant federal form filings. EB5 served as "Special Manager" of the HGE Funds and was the central facilitator and administrator of the securities placements. While so doing, EB5 was not registered with the Securities and Exchange Commission as a broker-dealer and was not a FINRA member.

According to Forbes Magazine, Higher Ground Education's mission was to "mainstream and modernize Montessori education through extending its principles across infancy and into high schools" and the company grew to operate 150 schools.[2] In 2025, however, HGE and related entities filed Chapter 11 bankruptcy in Texas following

[2] https://www.forbes.com/sites/petergreene/2025/07/31/giant-montessori-school-chain-files-for-bankruptcy/.

widespread school closures that decimated the school network and eliminated the jobs necessary to sustain Plaintiffs' immigration petitions. Consequently, Plaintiffs lost both their $500,000.00 investment and the promised immigration benefits that came with said investment.

The Complaint alleges that EB5 did not provide due diligence in evaluating HGE's enterprise-level losses and liquidity, school-level asset risks, enrollment volatility, site closures, and the feasibility of sustaining qualifying jobs. Plaintiffs accuse Defendant of materially misleading statements when it failed to disclose material adverse facts, including HGE's deterioration of liquidity, the sensitivity of direct job dependency on closures, and the project's dependence on bridge financing and new EB-5 inflows to sustain operations, among others.

Thus, Plaintiffs bring before this Court claims for securities fraud under the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq*. (Exchange Act § 10(b) and Rule 10b-5(b)); unregistered broker-dealer actions (Exchange Act § 15(a)); for rescission (Exchange Act § 29(b)); common-law fraud/fraudulent inducement; breach of fiduciary duty and duty of good faith and fair dealing; unjust enrichment; and seek an accounting and a constructive trust over identifiable proceeds and assets for the benefit of Plaintiffs and the class.

## ANALYSIS

Defendant posits this case should be transferred to Delaware because each Plaintiff subscribed to one of four HGE Funds, which were each organized as a single-purpose

Delaware limited liability company.[3] As part of the investment, each Plaintiff signed a subscription agreement (collectively, the "Subscription Agreements") and a corresponding operating agreement of the issuer (collectively, the "Operating Agreements"; together with the Subscription Agreements, the "Agreements"). The Subscription Agreements all contain exclusive applicable law and venue clauses designating Delaware law as the applicable law and Delaware courts as the venues with exclusive jurisdiction for any claims or disputes relating to the Subscription Agreements. Moreover, the Operating Agreements contain an exclusive consent-to-jurisdiction and inconvenient-forum-waiver provisions also designating Delaware as the chosen forum for any issues arising therefrom (collectively, the "Forum Selection Clauses").

Defendant posits that all of Plaintiffs' claims arise from the investments the Agreements govern, so the Forum Selection Clauses necessarily reach every claim they assert and venue is proper in Delaware under 28 U.S.C. § 1391(b)(1) and (2). It also asserts the Forum Selection Clauses are broad, mandatory, exclusive, and enforceable, and designate Delaware as the law of choice and venue. Because the Forum Selection Clauses are valid, the analysis set forth in Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex., 571 U.S. 49 (2013) governs and favors the transfer. Additionally, the HGE Funds themselves are also creatures of Delaware law and the Agreements arise under said law, so

[3] To raise EB-5 investment capital for a specific project, the project sponsor establishes a New Commercial Enterprise (NCE), either in the form of a Limited Liability Company (LLC) or Limited Partnership (LP). The NCE's main function is to pool funds from multiple investors (whose numbers could range from a handful to a few hundred) and then either invest or loan those funds to develop the project and create jobs. See American Immigrant Investor Alliance, https://goaiia.org/resource/eb5-investment-process/nce-jce-core-entities/.

on these facts, Defendant proffers the Delaware forum wins.

Plaintiffs disagree, averring the Forum Selection Clauses do not apply to their claims and Defendant cannot invoke them because it signed the Operating Agreements as Special Manager and not in an individual capacity.[4] They also assert that, even construing the Forum Selection Clauses broadly, their claims lack the corporate nexus necessary with Delaware to bring their claims within the scope of the clauses. In the alternative, they proffer the Forum Selection Clauses are unenforceable because the Agreements are vitiated by fraud and unregistered brokerage activity. Since there is no valid forum selection clause, the Court's analysis must instead revolve around traditional § 1404(a) balancing test, which favors Puerto Rico. Finally, Plaintiffs contend Delaware is an improper venue because HGE's bankruptcy was filed in Texas, not Delaware.

Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where it may have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a); Atl. Marine, 571 U.S. at 59; Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000). "Section 1404(a) is intended to place discretion in the District Court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Cianbro Corp. v. Curran-Lavoie, 814 F.2d 7 (1st Cir. 1987).

It is customary for the Court to give deference to a plaintiff's choice of forum, but "this deference is inappropriate when the parties have entered into a contract providing

[4] Plaintiffs sued EB5, Special Manager of the Funds, but did not include as defendants the issuer of the securities, HGE, that is also one of the contracting parties in one the Agreements they now seek to rescind.

for a different forum." Outek Caribbean Distrib., Inc. v. Echo, Inc., 206 F.Supp.2d 263, 267 (D.P.R. 2002).

The First Circuit analyzes the enforceability of a forum selection clause by looking at the following elements: whether the clause is mandatory or permissive; whether its scope reaches the claims at issue; and whether enforcement would be unreasonable under the factors set forth in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972); see also Claudio-De León v. Sistema Universitario Ana G. Méndez, 775 F.3d 41, 46–49 (1st Cir. 2014). The prevailing view towards contractual forum-selection clause is that "such clauses are prima facie valid and should be enforced unless the resisting party shows it to be unreasonable under the circumstances." Bremen, 407 U.S. at 15; Silva v. Encyclopedia Britannica Inc., 239 F.3d 385, 386 (1st Cir. 2001); In re Mercurio, 402 F. 3d 62, 64 (1st Cir. 2005). In other words, "[t]he forum clause should control absent a strong showing that it should be set aside." Bremen, 407 U.S. at 15. The burden falls upon the party opposing the forum selection clause, in this case Plaintiffs, to show why it should not be enforced. Outek Caribbean Distrib., Inc., 206 F.Supp.2d at 266.

The Court finds Plaintiffs have failed to make the strong showing necessary to set aside the Forum Selection Clauses for the reasons explained below.

**A. The Forum Selection Clauses.**

The Subscription Agreements govern Plaintiffs' investment in the HGE Funds. Section 11 of the Subscription Agreements provides: "This Subscription Agreement, the rights, and obligations of the parties hereto, and any claims or disputes relating thereto

shall be governed by and construed in accordance with the laws of the State of Delaware … with venue for any legal proceedings in connection therewith taking place within the exclusive jurisdiction of the state and Federal courts of the State of Delaware." (Docket No. 15, Exhibits A-1 to A-4, § 11). The acceptance page of each Subscription Agreement is signed by each Plaintiff as the Subscriber and by EB5 as Special Manager for the Fund. Id.

The Operating Agreements pertain to the internal functioning of the HGE Funds and apply to each Fund and its "Members", or persons who submitted capital contributions and otherwise meet the requirements, in this case Plaintiffs. Section 13.11 of the Operating Agreements provides that "in any action or proceeding in connection with or to enforce this Agreement, the parties hereto irrevocably consent to and confer personal jurisdiction on the courts of the State of Delaware, or the United States courts located within the State of Delaware, expressly waive any objections as to venue in any of such courts, and … Each party hereto hereby irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of such action or proceeding." (Docket No. 15, Exhibits B-1 to B-4, § 13.11). This document was signed by the applicable HGE Fund and by EB5, as both a member and in representation of Plaintiffs. Id.

1. Mandatory or permissive.

Under federal law, the threshold question in interpreting a forum selection clause is whether the clause is permissive or mandatory. "Permissive forum selection clauses, often described as 'consent to jurisdiction' clauses, authorize jurisdiction and venue in a

designated forum, but do not prohibit litigation elsewhere ... In contrast, mandatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum." Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 17 (1st Cir. 2009).

The Court looks to the specific language of the contract to determine whether the terms reflect "clear language indicating that jurisdiction and venue are appropriate exclusively" in a designated forum. Silva, 239 F.3d at 388. This inquiry usually hinges on whether the provision includes any terms with a mandatory connotation, such as "shall" or "must." See Haddock Acevedo v. Bd. of Governors of Univ. of Puerto Rico, 615 F.Supp.3d 78, 82-83 (D.P.R. 2022) (collecting cases).

The Subscription Agreements indicate they "shall" be governed and construed in accordance with Delaware law and the Delaware courts will have "exclusive" jurisdiction thereof. As caselaw has held, the words "shall" and "exclusive" have been found to be mandatory and clearly demonstrate the parties agreed to and intended to litigate this case in Delaware and not in Puerto Rico or anywhere else. See Centro Médico de Turabo, 575 F.3d at 17, n. 5 (including "shall" in a list of "typical mandatory terms"); Rodríguez Rodríguez v. Code Green Solar Puerto Rico, Civil No. 16-2674 (JAG/BJM), 2017 WL 11927753, at *5 (D.P.R. June 29, 2017) ("exclusive jurisdiction" is mandatory); De León, 775 F.3d at 46 (the word "shall" is mandatory).

The Operating Agreements, in turn, indicate the parties "irrevocably consent to and confer personal jurisdiction" on the state and/or federal courts of Delaware, and "expressly

waive" any venue objections and "irrevocably waive" any forum *non conveniens* defense. The words "irrevocably" and "expressly" are strong and specific terms, which clearly also demonstrate the parties intended to litigate this case in Delaware, to the exclusion of all others. This conclusion is in line with other cases that have found the use of words like "shall", "exclusive", "expressly" and "irrevocable" as mandatory. See Meta Med, LLC v. Insulet Corp., Civil No. 23-1546 (CVR), 2024 WL 1763610, at *8 (D.P.R. Apr. 23, 2024) (collecting cases on mandatory language); Rodríguez Rodríguez, 2017 WL 11927753, at *5.

Accordingly, the Court finds the Forum Selection Clauses in the Agreements are mandatory.

2. Whether the scope of the clauses reach the claims at issue.

Having established the clauses are mandatory, the Court looks at the second element, namely, Plaintiffs' main argument against transfer.

The language contained in the Subscription Agreements is broad and pertains to "the rights, and obligations of the parties" and applies to "any claims or disputes relating" and to "any legal proceeding in connection therewith" and indicate they will be governed by Delaware law and entertained in that venue exclusively. The language covers any claims or disputes, which clearly includes common law claims asserted herein by Plaintiffs.

Plaintiffs offer no argument as to the Subscription Agreements' provisions, which plainly reach the claims asserted. Instead, their argument centers around the Operating Agreements, where they aver the relevant language indicates they apply only to claims, "in connection with or to enforce this Agreement." They contend this is inapplicable to

their own claims, insofar as they do not seek to enforce anything and because their claims arise under common law and not "in connection with" any contractual obligations created by the Operating Agreements. They also proffer their claims lack the necessary nexus to bring them within the scope of the clauses and Defendant cannot invoke the clauses because it was not an individual signatory to the Agreements.

The Court cannot agree with Plaintiffs' narrow reading of this language. Section 13.11 indicates the parties' consent to Delaware jurisdiction "in any action or proceeding in connection with or to enforce this Agreement." (Docket No. 15, Exhibits B-1 through B-4 § 13.11). The words "in connection to" entail a much broader reach than Plaintiffs' limited interpretation. The very case they cite to, Huffington v. T.C. Group, LLC, 637 F.3d 18, 22-23 (1st Cir. 2011), addressed this specific issue and held that the language "with respect to" an agreement was sufficiently broad to encompass common law claims. In so doing, the First Circuit noted that "courts have often contrasted this language with narrower language - *e.g.,* 'to enforce,' 'to construe' - that could easily have been employed if a narrower focus were intended" and further, held that the words "with respect to" were synonymous with the phrases "with reference to", "relating to", "in connection with", and "associated with." Id. As argued by Defendant, the claims asserted by Plaintiffs in this case all arise from Defendant's actions under the Agreements. The alleged misrepresentations it made to induce Plaintiffs to invest and the fiduciary duties it allegedly breached all flow from the management role the Operating Agreements assigned to EB5, so this argument is unavailing. Plaintiffs' claims clearly arise in connection with

Defendant's contractual obligations created by the Agreements.

As to Plaintiffs' argument that their claims lack the necessary nexus to Delaware, the cases cited by Plaintiffs for this proposition were all based on lack of personal jurisdiction over defendants, unlike in the case at bar, where the parties explicitly bargained for such a forum and where the LLC's that issued the Funds in question were incorporated. In addition, although Plaintiffs aver there is no allegation in the Complaint regarding the governance or management of the HGE Funds, their entire case is based on the representations contained in those two Agreements and on Defendant's actions as Special Manager of the Funds. For this reason, this argument is also found wanting.

Regarding Plaintiffs' position that EB5 cannot invoke the Forum Selection Clauses because it only signed as Special Manager, this was squarely rejected by the recent First Circuit case of Manzo v. Wohlstadter, 171 F.4th 112, 114 (1st Cir. 2026) which held that the fact that promissory notes were signed by one owner on behalf of company and not by the owners personally did not preclude enforcement of a forum-selection clause. "We decline to find the clause inapplicable on such a basis when plaintiffs' claims against these defendants so clearly originate from the sale of and the alleged misrepresentations contained in the notes." Id. at 117, citing to Aguas Lenders Recovery Grp. v. Suez, S.A., 585 F.3d 696, 701 (2d Cir. 2009) (collecting cases and "find[ing] ample support for the conclusion that the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause"); see also Autoridad de Energía Eléctrica de P.R. v. Vitol, Inc., et al., Civil No. 09-2242 (SJM), 2016 WL 9443738, at *6

(D.P.R. 2016) (finding that mandatory forum selection clause applied to a non-signatory party and fell within the scope of the clause because of plaintiff's losses flowed from the agreement).

As in Manzo, Plaintiffs' claims against EB5 plainly arise and flow from its responsibilities and conduct as Special Manager as detailed in the Agreements. Thus, the Court finds that, having signed the Agreements in such capacity, does not preclude Defendant from invoking the Forum Selection Clauses.

3. Enforcement would be unreasonable.

A forum selection clause will be enforced unless the opposing party meets the heavy burden of showing its enforcement would be unreasonable. This element requires the Court to examine whether the clause was procured by fraud or overreaching or is somehow unfair, whether its enforcement would be so gravely difficult or inconvenient so as to deprive the party of its day in court or if "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." Bremen, 407 U.S. at 15.

The Court applies federal common law, as there is no conflict between federal common law and Puerto Rico law regarding the enforceability of forum-selection clauses. Silva, 239 F.3d at 387; Stereo Gema, Inc. v. Magnadyne Corp., 941 F.Supp. 271, 276 (D.P.R. 1996) (citing Unisys Puerto Rico v. Ramallo Bros. Printing, Inc., 128 D.P.R. 842, (1991)) (where the Puerto Rico Supreme Court adopted the federal caselaw regarding general enforceability of forum-selection clauses).

Plaintiffs first, aver the Forum Selection clauses were not freely negotiated but offer no reason to find them unenforceable on that basis alone. Investments like the ones in the present case often contain forum selection clauses that are not freely negotiated and courts have routinely upheld their validity despite this. See Centro Médico de Turabo, Inc., 575 F.3d at 21 (noting that "the presumption in favor of enforcing a forum selection clause applies even if the clause was not the product of negotiation" and collecting cases); In re Mercurio, 402 F.3d at 66 (indicating that forum selection clauses "are standard fare in today's multi-jurisdictional and international contractual relationships).

Plaintiffs then argue the clauses are void because the Agreements are voidable under the Section 29(b) of the Exchange Act, 15 U.S.C. § 78cc(b) as vitiated by fraud. Therefore, the clauses "share the taint" of the invalidity of the Agreements. Plaintiffs cite Lambert v. Kysar 983 F.2d 1110, 1122 (1st Cir. 1993) for this proposition, but Lambert only held that forum selection clauses are unenforceable when *they* are the product of fraud or coercion, it says nothing about the contract. See also Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 (1974) ("Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion"). In fact, the First Circuit held the opposite of Plaintiffs' position in Vitol, Inc., finding that forum-selection clauses "are enforceable even if [a party] argues that the contracts are void." Vitol, Inc., 859 F.3d at 147-48. In so doing, the Court noted the following:

> Appellants also spend a good deal of time trying to convince us that because the contracts themselves are void and unenforceable … the

> forum selection clauses are also void. The logical conclusion of the argument would be that the federal courts ... would first have to determine whether the contracts were void before they could decide whether, based on the forum selection clauses, they should be considering the cases at all. An absurdity would arise if the [federal] courts ... determined the contracts were not void and that therefore, based on valid forum selection clauses, the cases should be sent to [the state court]—for what? A determination as to whether the contracts are void?
>
> Vitol, Inc., 859 F.3d at 147.

The same holding applies here. Plaintiffs offer no additional arguments as to why the clauses themselves were the product of fraud, so this argument is unavailing as well.

Regarding the inconvenience of litigating in the Delaware forum, Plaintiffs argue they are foreign investors whose only connection to the United States was established through Defendant's operations in Puerto Rico. But none of the Plaintiffs resides in Puerto Rico either, so Delaware and Puerto Rico are on equal footing in this respect. In dealing with forum selection clauses, "inconvenience to at least one of the parties is an almost foregone conclusion....". In re Mercurio, 402 F.3d at 66; see also Cent. Contracting Co. v. Maryland Cas. Co., 367 F.2d 341, 344 (3d Cir. 1966) ("Mere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that [a party] received under the contract consideration for these things."). Plaintiffs offer nothing in support of their argument that proceedings in Delaware will be so gravely difficult and inconvenient that they will somehow be deprived of their day in court. EB5, although a Florida company, consented to personal jurisdiction in Delaware and is deemed to reside there for venue purposes. The HGE Funds at the center of Plaintiffs' allegations were issued by Delaware-

organized LLC's under Delaware-law Subscription Agreements. The Operating Agreements that define EB5's contractual role, and which are the main object of the Complaint, are also Delaware-law instruments drafted under and governed by said law. Moreover, and importantly, Plaintiffs irrevocably waived "to the fullest extent [they] may effectively do so" any forum *non conveniens* objections to Delaware by joining the Operating Agreements. (Docket No. 15, Exhibits B-1 to B-4, § 13.11).

Finally, that "enforcement would contravene a strong public policy of the forum in which suit is brought," has little relevance here, considering the strong ties Delaware has to this case as explained above. Plaintiffs' argument that enforcement in Delaware contravenes the Exchange Act's strong public policy is inapposite, as the focus must be on the public policy of the forum in which suit is brought. Rafael Rodríguez Barril, Inc. v. Conbraco Indus., Inc., 619 F.3d 90, 93 (1st Cir. 2010). The fact that the solicitation might have been made from Puerto Rico alone is insufficient to overcome the strong ties with the agreed-upon forum of Delaware.[5]

On these facts, Plaintiffs are unable to clear the high hurdle they face and the Forum Selection Clauses cannot be set aside. This is what Plaintiffs bargained for when they signed the Agreements. They cannot walk away and must adhere to that bargain.

[5] See also Fash Obalco, Inc. v. M.K.M. Indus., Inc., 888 F.Supp. 344, 347 (D.P.R. 1995) (noting that venue was proper in Puerto Rico because "a substantial part of the events or omissions giving rise to the claim occurred" here, but stating that "as the defendant in this action is a New Jersey corporation with its principal place of business in New Jersey, and the individual defendants Andrew and Barbara Kallen are also residents of New Jersey, there is no doubt that venue in this action may also lie in the District Court of New Jersey.").

**B. Transfer under the Atlantic Marine factors.**

Atlantic Marine makes clear that, when there is a valid forum-selection clause, "the plaintiff's choice of forum merits no weight" and instead "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." Atl. Marine, 571 U.S. at 63. "A court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." Id. at 64. Therefore, in evaluating the transfer of a case where a valid forum-selection clause exists, the Court considers only arguments about public-interest factors, which "rarely defeat a transfer motion" and "the practical result is that forum-selection clauses should control except in unusual cases." Id.

Public-interest factors bearing on the merits of a § 1404(a) motion to transfer venue include: the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981); Coronavirus Rep. v. Apple, Inc., 560 F. Supp. 3d 632, 641 (D.N.H. 2021).

Plaintiffs offer no analysis whatsoever as to any of these elements, opting instead to focus their arguments on the lack of a valid forum selection clause and the subsequent applicability of the traditional §1404 factors. As the Court has already found that the

Forum Selection Clauses are indeed valid, the Atlantic Marine analysis governs. Plaintiffs' effort falls well short, as their burden now is to address the question whether any public-interest factor affirmatively disfavors transfer. Thus, the Court disregards Plaintiffs' arguments.

As candidly argued by Defendant, Delaware law governs the Agreements that gave rise to this case and the HGE Fund issuers are Delaware LLC's. The District of Delaware is the federal court that sits in the state whose substantive law controls each HGE Fund and is the federal court with the most experience in applying Delaware law. Besides the fact that Defendant has an office in Puerto Rico, Puerto Rico has no particularized interest in this dispute, as Plaintiffs are foreign nationals who do not reside in Puerto Rico, the HGE Funds are Delaware entities and EB5 is a Florida LLC. Puerto Rico law plays no part in this case as no claims under local law have been brought and none of the schools where Plaintiffs' investments were to be utilized were in Puerto Rico. For this reason, it would be unfair to burden local jurors with jury duty about facts that have little bearing on local issues. Finally, the District of Delaware is amply capable of hearing Plaintiffs' claims under the Exchange Act. Also, as previously mentioned, the fact that solicitation for the investments may have been allegedly made from a Puerto Rico address does not tilt the scale in Plaintiffs' favor in comparison to the strong ties with the agreed-upon forum of Delaware.[6] All roads thus lead to Delaware.

[6] The Court conducted an internet search of Defendant's alleged office in Puerto Rico at the address indicated in the Complaint, to wit, 954 Avenida Ponce de León, Suite 205, San Juan, PR 00907. (Docket No. 1, p. 8, ¶41). The search shows it is in the Miramar Plaza building and seems to be a shared virtual office and commercial mail receiving space used by different businesses (Relocate Puerto Rico, Optimal Health Advocates, Munera Capital) and law firms (Eidson

Plaintiffs' final argument, that transfer to Delaware is improper and would not promote judicial economy because the HGE bankruptcy is in Texas, misses the point. The parties specifically chose to litigate in Delaware and to have their claims heard under Delaware law, to the exclusion of all others. Having found the Forum Selection Cluses are enforceable, any defense Plaintiffs might have falls short. Thus, the fact that HGE's bankruptcy case was filed in Texas, by itself, does not make Delaware improper. It could perhaps make Texas an additional possible venue.

In any event, Texas would not necessarily be a convenient forum for Plaintiffs because as far as the Court can tell, Plaintiffs are foreign nationals who have no contacts there either and they specifically chose *not* to bring HGE as a defendant in this case. Plaintiffs cannot now argue that the chosen forum by HGE, a non-party in this case, for its bankruptcy is allegedly more convenient and judicially economical for them when they specifically chose not to bring HGE into this case and when the parties explicitly agreed to litigate exclusively in Delaware.

For these reasons, the Court concludes that a transfer to Delaware is proper under Atlantic Marine and 28 U.S.C. § 1404(a).

## CONCLUSION

For the foregoing reasons, Defendant's "Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) and Supporting Memorandum of Law" (Docket No. 14) is GRANTED. The Clerk of Court shall transfer this case to the United States District

Law Firm, Laukaitis law). Thus, it seems the address is simply a postal address and not a physical office.

Court for the District of Delaware.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 2nd day of September of 2026.

s/ CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES DISTRICT JUDGE